IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DORIS JEAN BUTLER                                                                    PLAINTIFF

VS.                                                           CIVIL ACTION NO.  1:19cv279-FKB

ANDREW M. SAUL,
  Commissioner of Social Security                                              DEFENDANT

## ORDER

Doris Jean Butler protectively filed for a period of disability and disability insurance benefits on June 10, 2016.  After her application was denied initially and upon reconsideration, she requested and was granted a hearing before an ALJ.  On July 24, 2018, the ALJ issued a decision finding that Butler was not disabled.  The appeals council denied review.  Plaintiff now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Having considered the memoranda of the parties and the administrative record, the Court concludes that the decision of the Commissioner should be affirmed.

## II.  Facts and Evidence Before the ALJ

Butler was born on March 19, 1964, and was 54 years of age at the time of the decision of the ALJ.  She has a high school education and past relevant work experience as an industrial cleaner.  Butler alleges disability beginning January 25, 2014, due to low back pain.  She was insured for benefits through June 30, 2017.

Butler suffered a work injury to her back in 2010.  R. 105, [11] at 109.  Thereafter she experienced continuing back pain, and in December of 2012 she underwent a

lumbar laminectomy for herniated disc.  R. 342-43, [11] at 346-47.  At follow-up appointments in February and March of 2013, her neurosurgeon, Dr. Oliver Kesterson, noted that her neurological complaints had improved with surgery but that she continued to experience mechanical lumbar pain and anterior leg pain.  R. 342-45, [11] at 346-49.  She was treated with Percocet, Neurontin and a TENS unit.  R. 345, [11] at 349.  At a May 21, 2013 appointment, the nurse practitioner in Dr. Kesterson's office informed Butler that he would no longer refill her pain medication and that he had nothing else to offer her.  R. 346, [11] at 350.  Dr. Kesterson released her and referred her back to Dr. Henderson.  R. 395, [11] at 399.

In August of 2013, Dr. Henderson began treating Butler's pain with oxycodone and Flexeril.  R. 396, [11] at 400.  Thereafter, Dr. Henderson saw her frequently and regularly up until the time of her ALJ hearing, continuing to prescribe oxycodone and Flexeril, as well as Meloxicam.  Diagnosis was consistently chronic back pain.  Beginning in February of 2014, Dr. Henderson began stating in the impression portion of his notes for each visit that Butler was totally disabled due to back pain and chronic use of pain medication.  R. 386, [11] at 390.  In September of 2017, he stated in a letter that Butler was unable to perform any work due to chronic back pain and the sedating effects of chronic pain medication.  R. 546, [11] at 550.

In July of 2015, Dr. Seema Badve performed a consultative medical examination of Butler.  Upon examination, he noted diffuse tenderness in the lumbar spine.  R. 426, [11] at 430.  Forward flexion was extremely limited, and extension was ten degrees with spasm of the paraspinal muscles.  *Id.*  Seated straight leg raises were painful.  *Id.*  Gait

2

was normal. *Id.* Butler was unable to squat, and she refused to heel-toe walk, saying she would be unable to do so. *Id.* Strength was normal in all extremities; reflexes were one plus in all extremities. *Id.* There was no sensory loss. *Id.* Dr. Badve stated that her low back pain could be the result of degenerative arthritis. R. 427, [11] at 431.

A consultative examination was performed in August of 2016 by Dr. Robert L. Cobb. Examination revealed some muscle tenderness across the lower back without spasm. R. 536, [11] at 540. Range of motion was 80 degrees flexion, 15 degrees extension, and 20 degrees lateral bending. *Id.* Butler was able to squat or kneel and recover. *Id.* Straight leg raises were negative. *Id.* Motor, sensory and cerebellar functions were intact. R. 537, [11] at 541. Dr. Cobb's opinion was that Plaintiff could engage in ambulatory activity for 30 to 60 minutes at a time for a total of five to six hours per day; that she could occasionally bend at the waist, squat, and kneel; and that she could lift and carry ten pounds frequently and 15 to 20 pounds occasionally. *Id.*

In December of 2017, Dr. Henderson prepared a clinical assessment of Butler's pain. He opined that pain would distract Plaintiff from work activities for at least two hours in an eight-hour work day, that physical activity would greatly increase her pain, causing destraction from or abandonment of tasks for at least two hours a day, and that her pain would cause her to miss two days of work per month. R. 578-79, [11] at 582-83.

The records contain several radiological evaluations of Plaintiff's spine. X-rays in February of 2014 showed mild degenerative changes throughout the lumbar spine. R. 388, [11] at 392. In July of 2014, x-rays of the thoracic spine showed minimal

3

degenerative changes; x-rays of the lumbar spine showed mild degenerative changes; and x-rays of the cervical spine revealed multilevel degenerative changes, including bilateral neural foraminal narrowing, with no acute findings. R. 498-500, [11] at 502-04. Radiological interpretation of x-rays of the lumbar spine in August of 2016 was "unremarkable lumbar spine." R. 534, [11] at 538. One year later, in August of 2017, lumbar x-rays were again interpreted as normal. R. 550-51, [11] at 554-55.

In March of 2018, after her last-insured date but before the ALJ's decision, Plaintiff underwent MRI's of the cervical, thoracic, and lumbar spine. Cervical MRI revealed the following: Multilevel disc bulges and unconvertebral joint hypertrophy with resulting central canal stenosis at C4/5, C5/6, and C7/T1, and multilevel foraminal narrowing; and moderate canal stenosis at C4/5 and C5/6, causing mass effect on cord. R. 595, [11] at 599. Thoracic MRI showed a mild disc bulge at T5/6 with mild bilateral neural foraminal narrowing. R. 598, [11] at 602. The lumbar MRI revealed broad-based disc bulges at L3/4 and L4/5 with facet joint hypertrophy resulting in bilateral neural foraminal narrowing, mild at L3/4 and moderate at L4/5; there was no central canal stenosis. R. 597, [11] at 601.

At the hearing, Butler testified as follows: She suffers from severe daily low back pain. R. 106-07, [11] at 110-11. Standing for too long causes her left side to go numb. R. 105, [11] at 109. If she bends over, her back will collapse. *Id.* Bending over also causes pain down her left side. R. 106, [11] at 110. During the night, she suffers from muscle spasms. R. 105, [11] at 109. She rated her pain as a ten on a ten-point scale. R. 106, [11] at 110. She takes oxycodone daily for pain relief. R. 107, [11] at 111. Side

effects of her medication include stomach problems and mental confusion. R. 107-08, [11] at 111-112. Although she stated that she drives "pretty often," she also stated that she is unable to drive when taking pain medication. R. 104, 108, [11] at 108, 112..

Butler's daily activities consist of resting in a recliner and doing light cooking, such as warming things in the microwave. R. 109, [11] at 113. She performs no household chores. *Id.* She estimated that she can lift or carry ten pounds and can stand for one hour. R. 108, [11] at 112. She would be unable to walk a mile because of pain. R. 108-09, [11] at 112-13. She uses a cane for ambulation, although she stated that no one has recommended that she use an assistive device. R. 109-10, [11] at 113-14.

Also testifying at the hearing was a vocational expert (VE). The VE classified Butler's past relevant work as industrial cleaner. R. 113-14, [11] at 117-18. Both the ALJ and Plaintiff's counsel posed hypotheticals to the V.E. The hypothetical relied upon by the ALJ in his decision was posed by him and described the following person: An individual of the same age, education, and work experience as Butler, who can lift 20 pounds occasionally and ten pounds frequently, who can stand, walk or sit for six hours in an eight-hour day but requires a sit/stand option every thirty minutes for up to five minutes without time off-task, who can occasionally stoop, kneel, and crouch, who can never climb ladders, ropes, and scaffolds, who requires an assistive device, and who must avoid hazards such as dangerous moving machinery and unprotected heights. R. 114-15, [11] at 118-19. The VE testified that the individual described could perform the jobs of bench assembler, garment sorter, and non-postal mail clerk. *Id.*

### III. The Decision of the ALJ

In evaluating Plaintiff's claim, the ALJ worked through the familiar sequential evaluation process for determining disability.[1]  He found that Butler met the insured status requirements for Title II benefits through June 30, 2017.  R. 16, 17, [11] at 20, 21.  At step one, the  ALJ found that Plaintiff has not been engaged in substantial gainful employment since her alleged onset date of January 25, 2014. R. 17, [11] at 21.  At step two, the ALJ found that Butler has the severe impairments of degenerative disc disease of the lumbar spine, status post laminectomy at L4/5, and chronic pain syndrome.  R. 18, [11] at 22.  The ALJ made a step three finding that Butler has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  The ALJ determined that Butler has the residual functional capacity (RFC) to perform light work, including sitting, standing, or

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

     (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

     (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

     (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

     (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

     (5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

walking for six hours in an eight-hour day, with the following limitations:  She must be able to alternate between sitting and standing every 30 minutes, up to five minutes without time off-task; she requires an assistive device to ambulate; she can only occasionally stoop, kneel, and crouch; she can never climb ladders, ropes, or scaffolds; and she must avoid exposure to hazards such as dangerous moving machinery and unprotected heights.  R. 19, [11] at 23.

In determining Plaintiff's RFC, the ALJ considered her testimony regarding her pain and limitations but determined that it was not entirely consistent with the other evidence of record.  R. 19-20, [11] at 23-24.  He also considered the opinion of Dr. Henderson but gave it little weight, finding that is was inconsistent with the medical record.  R. 21, [11] at 25.

 At step four, the ALJ found that Butler cannot perform her past relevant work as an industrial cleaner.  R. 22, [11] at 26.  Relying on the testimony of the VE, the ALJ determined that Butler is capable of performing the alternate jobs of bench assembler, garment sorter, and non-postal mail clerk.  R. 23, [11] at 27.  He therefore found that she had not been disabled at any time from January 25, 2014, through June 30, 2017 .  *Id.*

## IV.  Analysis

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and

whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2]

In her memorandum, Plaintiff alleges the following errors on the part of the ALJ:

> The ALJ erred in failing to consider or discuss the results of the MRI's performed in March of 2018.
>
> The ALJ failed to properly evaluate the opinion of Butler's treating physician, Dr. Henderson.
>
> Although the ALJ gave significant weight to the opinion of Dr. Cobb, the ALJ's findings as to Plaintiff's residual functional capacity (RFC) were not consistent with that opinion.

***March 2018 MRI's.*** Butler contends that the ALJ failed in his duty to consider all relevant evidence by ignoring the MRI's performed in March of 2018. In response, Defendant argues that because the MRI's were performed after the date on which Plaintiff was last insured, the ALJ properly disregarded them.

The expiration date for insured status does not necessarily operate as a cut-off date for relevant evidence. Medical evidence after the expiration of insured status can be relevant on the issue of the severity of the claimant's condition prior to the expiration. *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). But in the present case, the evidence was somewhat remote in time (ten months) from the expiration date, and the lumbar

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is against the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

spine results were generally consistent with prior x-rays showing only mild degenerative changes.  The only new information in the MRI concerning Plaintiff's lumbar spine was a finding of bilateral neural foraminal narrowing, mild at L3/L4 and moderate at L4/L5.   At best, this evidence was only marginally relevant.  And, it is unlikely that the ALJ's finding as to disability would have differed even had he considered the MRI's.  For these reasons, the Court  finds that the ALJ did not commit reversible error in his failure to consider the MRI's.

***Evaluation of Opinion of Dr. Henderson.***  Dr. Henderson, Butler's family practitioner, opined that Butler was completely disabled due to chronic back pain and the effects of her pain medication.  Plaintiff argues that the ALJ erred in assigning little weight to this opinion.  Fifth Circuit case law provides that a treating physician's opinion as to the nature and severity of a claimant's impairment generally deserves great weight.  *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).[3]  However, where good cause is shown, less weight, or even no weight, may be given to a treating physician's opinion.  *Id.* at 466.  Good cause may be established  where the treating physician's opinion is "brief or conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."  *Id.* at 466 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1991)).  Butler's medical record does not support Dr. Henderson's opinion.  The radiologic record indicates that during her insured period, she suffered from only mild degenerative changes in the lumbar region.

---

[3] The basis of the treating physician rule is 20 C.F.R. § 404.1527(c)(2).  In January of 2017, the Social Security Administration repealed the rule effective for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017), 2017 WL 168819.

Moreover, Dr. Henderson gave no opinion as to Butler's specific physical limitations. Rather, he merely rendered an opinion on this issue of disability, which is a question reserved exclusively to the ALJ. *See Martinez v. Astrue*, 252 F. App'x 585, 588 (5th Cir. 2007). The ALJ established good cause for the weight given to Dr. Henderson's opinion by pointing out that it was inconsistent with the medical record, including findings of normal muscle tone, full strength, intact sensation, normal coordination, and normal gait. For these reasons, the Court concludes that the ALJ did not err in giving little weight to the opinion of Dr. Henderson.

  ***RFC Findings.***  Butler contends that although the ALJ indicated that his RFC finding was based upon the opinion of Dr. Cobb, his findings were inconsistent with it. First she claims that Dr. Cobb's finding that she could lift and carry 15 to 20 pounds does not support the ALJ's finding that she could perform light work, which involves lifting no more than 20 pounds and frequent lifting or carrying of ten pounds. *See* 20 C.F.R. § 416.967(b). Butler does not explain the alleged inconsistency, and the undersigned finds none. Next, she argues that the ALJ's opinion that she could perform light work, with its requirement of the ability to stand or walk for six hours, was inconsistent with Dr. Cobb's opinion that she could engage in ambulatory activity for five to six hours a day.[4] But, as Defendant points out, "ambulatory" generally relates only to the ability to walk, not to the ability to stand.[5] Thus, Dr. Cobb placed no limitations on

---

[4] Light work requires "standing or walking, off and on, for a total of approximately six hours of an eight-hour workday." Social Security Ruling (SSR) 83–10, 1983 WL 31251, at *6. The ALJ found that Butler could perform light work and did not limit her ability to stand and walk, other than to include the limitations of a sit/stand option and the use of an assistive device. Thus, he implicitly found that she could stand or walk for six hours.

[5] *See, e.g.*, https://www.merriam-webster.com/dictionary/ambulatory, accessed June 19, 2020.

Butler's ability to stand, and his opinion is not inconsistent with the ALJ's implicit finding that she could walk or stand for six hours a day.  Finally, Butler also argues that while Dr. Cobb stated that Plaintiff could only occasionally bend, the ALJ failed to reference this opinion in his RFC finding.  But while the ALJ did not use the word "bend," he did state that she could only occasionally stoop and crouch.  Defendant argues that stooping and crouching are terms that describe the type of bending that is necessary in work activity.  The Court finds Defendant's argument persuasive.  Dr. Cobb's opinion as to Plaintiff's ability to bend supported the ALJ's finding that she could occasionally stoop and crouch.  In short, the ALJ's findings were consistent with Dr. Cobb's opinion, and the ALJ did not err in his interpretation of and reliance upon it.

## V. Conclusion

In conclusion, the Court finds that the ALJ's decision was supported by substantial evidence and that no reversible legal errors were made.  Accordingly, the decision of the Commissioner is affirmed.  A separate judgment will be entered.

So ordered and adjudged, this the 28th day of July, 2020.

/s/ F. Keith Ball  
United States Magistrate Judge